Gregory D. Phillips (USBN 4645)
PHILLIPS WINCHESTER
4001 South 700 East, Suite 500
Salt Lake City, Utah 84107

*Attorneys for Plaintiff XMission, L.C.*

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| XMISSION, L.C., a Utah company,<br><br>Plaintiff,<br><br>vs.<br><br>PURE HEALTH RESEARCH; DOES 1-10,<br><br>Defendants. | **PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT DISCOVERY LIMITED TO THE ISSUE OF PERSONAL JURISDICTION AND REQUEST FOR STAY OF MOTION TO DISMISS**<br><br>Case No. 2:21-cv-00734-DAO<br><br>Judge: Daphne A. Oberg |

Plaintiff, XMission, L.C. ("XMission" or "Plaintiff") respectfully moves the Court for entry of an Order granting Plaintiff leave to conduct discovery limited to the issue of whether the Defendant, Pure Health Research ("Defendant"), is subject to the personal jurisdiction of the Court. Plaintiff also requests a stay of the *Motion to Dismiss* [Doc 5] until after jurisdictional discovery is complete.

As detailed below, the law of this Circuit authorizes jurisdictional discovery where there is doubt about the underlying facts regarding personal jurisdiction. XMission specifically seeks discovery relating to:

1. Defendant's agency relationship with its marketing affiliates, including the existence and enforcement of compliance protocols.

1

2. Defendant's unsubscribe practices and protocols, including specifically data pertaining to unsubscribe requests from XMission's customers and other Utah IP Addresses.

3. The Domains owned, controlled, and/or used by Defendant to send emails directly, and any corresponding opt-in information.

4. Defendant's revenue generated from Utah, including whether the revenue was generated from commercial emails sent to Utah.

## LEGAL STANDARD

Generally, when "a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Budde v. Ling-Temco Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975). The court has broad discretion in deciding whether to grant jurisdictional discovery, but abuses that discretion when a denial of discovery prejudices a litigant. *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002). Prejudice is present where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary. *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir.2002)).

Moreover, Defendant's counsel, Mr. Scott Jacobsen, has not opposed a similar motion for jurisdictional discovery in another similar matter involving Plaintiff. *See XMission v. Primal Health*, Civil No. 2:21-cv-00539-HCN (D.Utah) (Doc. 13), and Magistrate Judge Bennett granted Plaintiff's Motion. *Id.* at Doc. 16.

## ARGUMENT

The Tenth Circuit has stated that, as a general rule, parties facing a motion to dismiss based upon jurisdictional grounds (subject matter or personal) should be allowed to conduct discovery into the factual averments upon which the motion is based. "When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Sizova v. Nat'l Inst. of Standards & Tech,* 282 F.3d 1320, 1326 (10th Cir. 2002); *see also Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 n.13 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues."); Wright & Miller, 8 *Fed. Prac. &Proc. Civ. 2d* § 2009 ("Although there was once doubt on the point, it has long been clear that discovery on jurisdictional issues is proper.").

A refusal to grant jurisdictional discovery "constitutes an abuse of discretion if the denial results in prejudice to a litigant. Prejudice is present where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Sizova*, 282 F.3d at 1326 (citation and court's ellipse omitted; reversing the dismissal of a complaint on subject matter jurisdiction grounds without being allowed limited discovery.)

Here, Plaintiff faces a motion to dismiss based on a lack of personal jurisdiction wherein Defendant asserts facts on controverted issues bearing on the question of jurisdiction for which discovery is necessary. Thus, Plaintiff should be allowed to conduct discovery into Defendant's allegations.

First, Defendant's *Motion* asserts that it relies on third party affiliates for the transmission of email, that it has no contact with or control over the affiliates' actions, and that Defendant expects the affiliates to comply with the law. (*See Declaration of Giedrius Cekanskis,* ¶¶ 5-7, 9). These allegations require additional discovery on the issue of the existence of an agency

3

relationship between Defendant and its affiliates. Specifically, the nature of Defendant's relationship with its affiliate marketers and any written agreements that govern the same, the manner of compensation and associated records, the creation of email content, the source of recipient email lists, and Defendant's practices to verify and confirm that the emails promoting its products will comply with the CAN-SPAM Act, including the existence and enforcement of any compliance policies.

Agency was specifically not at issue in *XMission v. Fluent*. In fact, the Tenth Circuit stated,

> We do not foreclose the possibility that jurisdiction over a defendant could be based solely on activities of its agents. But that possibility is irrelevant to this case because XMission has not challenged the district court's determination that the publishers were not agents of Fluent.

*XMission v. Fluent*, 955 F.3d 833, 847 (10th Cir. 2020). As agency can form the basis for jurisdiction, and as Defendant raised facts relevant to agency, which facts are controverted[1], discovery on this issue is necessary.

Second, Defendant's *Motion* admits that Defendant sends its own emails, but claims that such are only to customers who have not opted-out. (*See Declaration of Giedrius Cekanskis*, at ¶¶ 8-9). Of course, if customers opt-in, there will be a record of opt-in, including IP Address, which would necessarily indicate a location in Utah. Accordingly, discovery is necessary to obtain a list of Domains used by Defendant to send its own emails, as well as opt-in information and data relied upon for the emails. XMission believes that such will conclusively establish that Defendant was aware that it was sending emails to Utah.

---

[1] XMission's *Complaint* alleges the existence of an agency relationship between Defendant and its affiliate marketers. (*See Compl.*, at ¶¶ 3, 6, 20-25).

Further, Defendant claims that is provides its affiliates with do-not-mail suppression list that identifies all recipients who have previously opted-out. (*See Declaration of Giedrius Cekanskis*, ¶¶ 7). Suppression information and data will similarly include data, such as IP Addresses, indicating knowing email activity in Utah.

Based on Defendant's foregoing admission, this case is far more similar to *XMission v. Click Sales, Inc.*, than it is to *XMission v. Fluent*. On a challenge to personal jurisdiction, the Court in *XMission v. Click Sales* found:

> First, ClickBank creates and sends emails promoting some of its own ventures, such as ClickBank University, directly to XMission customers in Utah. Although ClickBank argues that ClickBank's direct emails are not spam, XMission alleges that the emails violate CAN-SPAM because XMission requested that its customers be unsubscribed from the emails and ClickBank continued to send them."

*XMission v. Click Sales, Inc.*, Case No. 2:17cv1287DAK, *Memo. Decision and Preliminary Injunction Order*, 7 (D. Utah, April 11, 2019). The Court further explained:

> XMission has an automatic unsubscribe system that notified ClickBank of its customers' desires to unsubscribe to future ClickBank emails. The nature of XMission's CAN-SPAM claims against ClickBank for allegedly violating the unsubscribe request by sending subsequent emails to its Utah customers, necessarily alleges that ClickBank knew it was sending those subsequent emails into Utah. Therefore, even if ClickBank contends that it sends ClickBank University emails indiscriminately to every state in the nation and therefore no state in particular, such an email sent to a Utah customer after that Utah customer has requested no further such emails is "directed" at Utah because ClickBank is already on notice not to send the email to that customer in Utah.

*XMission v. Click Sales, Inc.*, *Memo. Decision and Preliminary Injunction Order*, 8 (D. Utah, April 11, 2019).

Here, not only does XMission allege that Defendant sent its own emails which violate the CAN-SPAM Act, it also alleges that XMission customers continued to receive emails after opt-

5

out requests, which opt-out requests would have come from traceable IP Addresses in Utah. Therefore, discovery regarding Defendant's suppression practice and protocols, and its opt-out data, specifically from Utah IP Addresses, is necessary as such will likely demonstrate Defendant's knowledge that it received unsubscribe requests from Utah, and in some cases, failed to honor them by continuing to send email into Utah.

Lastly, Defendant admits that it has customers in all 50 states, including Utah, and that is generated income from Utah. (*See Declaration of Giedrius Cekanskis*, at ¶¶ 10, 19). Discovery regarding the source of Defendant's Utah revenue is necessary for a complete jurisdiction analysis. Specifically, data and information regarding the source of revenue and how such was generated (e.g., through email advertisements or other mechanisms), the amount of revenue generated from Utah (and the number of consumer transactions in question), whether any revenue was generated from any XMission customer, and the timing of such revenue in correlation with the email activities in question. It is very likely that such discovery will reveal a high number of consumer transactions in Utah generated from email marketing campaigns in Utah.

As all of the foregoing will bear on the issue of personal jurisdiction, and Plaintiff is without facts to fully address the issues raised by the *Motion*, jurisdictional discovery is necessary.

## CONCLUSION

As the Tenth Circuit has recognized, limited jurisdiction discovery is generally available in order to clarify and/or controvert a defendant's factual assertions regarding personal jurisdiction. In this case, Defendant has asserted that Plaintiff cannot establish personal jurisdiction over it. The Court should allow Plaintiff to conduct discovery to controvert Defendant's assertions just as Defendant agreed to and Magistrate Judge Bennett ordered in *XMission v. Primal Health.* Jurisdictional discovery will not unduly delay the litigation or burden Defendant, and denying an opportunity for such discovery would be extremely prejudicial to Plaintiff. The Court should also stay the *Motion to Dismiss* until the requested discovery is complete.

DATED this 23rd day of February 2022.

PHILLIPS - WINCHESTER

 /s/ Gregory D. Phillips

Gregory D. Phillips

*Attorneys for Plaintiff*
