IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| XMISSION, L.C., a Utah company,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>PUREHEALTH RESEARCH, a Virginia business entity; and DOES 1–10,<br>　　　　　　　　Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO RECONSIDER, PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO APPEAL, AND DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND BILL OF COSTS<br><br>Case No. 2:21-cv-734-TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Plaintiff's Motion for Reconsideration Re Motion to Dismiss,[1] Plaintiff's Motion for Extension of Time to Appeal,[2] and Defendant's Motion for Attorneys' Fees and Bill of Costs.[3] Plaintiff filed a timely Notice of Appeal on January 4, 2023,[4] as such the Court will deny the Motion for Extension as moot. For the reasons discussed below, the Court will also deny the two remaining motions.

I. BACKGROUND

Plaintiff sued Defendants for alleged violations under the CAN-SPAM Act[5] and the Utah Consumer Sales Practices Act[6] for emails sent by PureHealth Research ("PureHealth") itself to

---

[1] Docket No. 26.

[2] Docket No. 28.

[3] Docket No. 27.

[4] Docket No. 32.

[5] 15 U.S.C. § 7701 *et seq.*

1

customers, called "newsletters," and PureHealth marketing emails sent by third-party affiliates.[7] PureHealth filed a Motion to Dismiss under Fed R. Civ. P. 12(b)(2) arguing that the Court could not exercise personal jurisdiction over PureHealth based on the facts alleged.[8] The Court granted the Motion, concluding that Plaintiff failed to meet its burden to show the Court could appropriately exercise personal jurisdiction over Defendants and dismissed the matter without prejudice.[9] Plaintiff subsequently filed a Motion for Reconsideration.[10] PureHealth filed a Motion for Attorneys' Fees requesting $21,672 in attorney's fees and $272.45 in costs incurred in its defense.[11] The Court will address both motions in turn.

## II. DISCUSSION

A. MOTION FOR RECONSIDERATION

"Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."[12] "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior

---

[6] Utah Code Ann. § 13-11-1.

[7] Docket No. 19-4 ¶ 8.

[8] Docket No. 5.

[9] Docket No. 24.

[10] Docket No. 26.

[11] Docket No. 27.

[12] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

2

briefing."[13] Further, "it is not appropriate to supplement the record on a motion to reconsider absent a showing that the evidence is newly discovered or previously unavailable."[14]

Plaintiff attached a Second Declaration of Peter Ashdown to its Motion and cited to it throughout in support of its arguments. The declaration contains additional information regarding the emails sent by PureHealth itself, including facts that were not in the record at the time of the Court's ruling. After careful review, these facts include: the comparison of the customer list with the recipients of the emails directly from PureHealth and the allegation that PureHealth sent emails to recipients who were not customers;[15] the allegation that of the 2,060 emails identified in the Complaint as sent post opt-out, 157 were sent by PureHealth itself;[16] and that out of the 763 emails sent by PureHealth itself, 247 do not include a correct physical address of the sender.[17]

Plaintiff argues that these newly asserted facts, along with others previously asserted, demonstrate that the Court misapprehended the facts. However, Plaintiff has not shown that the newly asserted facts were previously unavailable.[18] Instead, Plaintiff argues they could be gleaned "from prior evidence and pleadings."[19] Plaintiff failed to present this evidence during briefing on the Motion to Dismiss or in the Complaint. The Court therefore declines to give

---

[13] *Id.* (citations omitted).

[14] *Carolina Indus. Prods., Inc. v. Learjet, Inc.*, 194 F. Supp. 2d 1170, 1173 n.1 (D. Kan. 2002) (citing *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1524 (10th Cir. 1992)).

[15] Docket No. 26-1, at 3.

[16] *Id.* at 5.

[17] *Id.* at 17.

[18] Docket No. 36, at 2 (arguing, without citation to legal support, that "even if the facts were new, the Court could still consider them as they are material to the issue of jurisdiction.").

[19] *Id.*

Plaintiff a second opportunity to introduce previously available evidence or make previously available arguments and will not consider the new information.

Plaintiff argues that the Court misapprehended the facts and the law in concluding that it did not have personal jurisdiction over Defendants for the asserted claims. Specifically, Plaintiff argues that "the Court's analysis improperly focuses on the actions delegated to PureHealth's affiliates and not on PureHealth's own conduct"[20] and contends that the Court was confused about the two bodies of emails.

The Court did not misapprehend that the case involved two bodies of emails, as evidenced by the Court's analysis of both the affiliate emails and the newsletter emails in the Order.[21] Plaintiffs argue that the Court erroneously relied on *Xmission v. Fluent*[22] and *Shrader v. Biddinger*,[23] in analyzing the emails sent by PureHealth itself. This is not the case. The Court concluded that, similar to *Fluent*, PureHealth did not know to whom *affiliate* emails were sent or have contact with affiliates to so dictate.[24] The Court was not addressing the newsletter emails sent by PureHealth in comparing the case to *Fluent*.

Additionally, the Court discussed PureHealth's conduct in relation to its affiliates when citing *Shrader*, in which the Tenth Circuit concluded "if the plaintiff does not show that the defendant otherwise knew where the recipient was located, the email itself does not demonstrate

---

[20] Docket No. 26, at 6.

[21] Docket No. 24, at 7 ("XMission has not shown that PureHealth knew any affiliate emails would be sent to the residents of Utah . . . . The affiliates, rather than PureHealth, decide to whom affiliate emails are sent."); *Id.* at 9 ("XMission has also failed to establish that PureHealth expressly aimed the newsletter emails to Utah.").

[22] 955 F.3d 833 (10th Cir. 2020).

[23] 633 F.3d 1235 (10th Cir. 2011).

[24] Docket No. 24, at 7–8. The Court also concluded, again, focusing on PureHealth's conduct, that "there [was] no evidence to show that PureHealth sent any affiliate emails." *Id.* at 8.

4

purposeful direction of the message to the forum state."[25] In doing so, the Court concluded that there was no evidence that the affiliates had physical addresses of the email recipients, nor was there a basis to conclude that PureHealth sent affiliate emails. Plaintiff therefore does not demonstrate clear error here.

Plaintiff also argues that the Court erroneously concluded that PureHealth did not expressly aim emails into Utah.[26] Contrary to Plaintiff's assertion,[27] the Court acknowledged in the Order that PureHealth at least constructively knew that it sent emails to Utah customers. However, the Court concluded that despite showing PureHealth had constructive knowledge and thereby expressly aimed the emails, Plaintiff failed to allege sufficient facts to tie the expressly-aimed newsletter emails to the harms alleged.[28] Plaintiff also contests the Court's conclusion that the only claim it specifically tied to the newsletter emails was the allegation that the emails contained "false or misleading" subject headings (15 U.S.C. 7704(a)(2)).

The Court previously concluded that Plaintiff failed to articulate how the email headers in Exhibit C of the Opposition to the Motion to Dismiss were false or misleading. The emails allegedly sent by PureHealth to Plaintiff's customers had the following subject lines: "Get It While You Still Can!"[29]; "Got 7 seconds? Burn pounds of fat starting today"[30]; "#1 Tip to Stop

---

[25] *Shrader*, 633 F.3d at 1248.

[26] Docket No. 26, at 8.

[27] *Id.* ("The Order appears to conclude that, despite PureHealth's business records which associate email addresses with physical locations in Utah, such as an insufficient level of knowledge to satisfy 'express aiming' . . . This is an error of law that this Court should correct.") (internal citation omitted). Plaintiff discusses at length that constructive knowledge can be relied on to support express aiming. *Id.* at 8–10.

[28] Docket No. 24, at 9–10.

[29] Docket No. 19-3, at 1–3.

[30] *Id.* at 4–6.

5

Vision Loss (Do THIS)"[31]; and "1 Cup Melts Arm & Belly Fat While You Sleep."[32] Plaintiff alleged that it received 655 emails from PureHealth itself in addition to the approximately 7,800 sent by affiliates and alleged generally that the emails sent by PureHealth resulted in customer complaints and contributed to Plaintiff's spam problem. However, Plaintiff failed to allege any facts explaining how or why the subject lines were false or misleading and likely to "lead a reasonable person to expect something materially different than the messages*[sic]* actual content."[33] A customer complaint about an email does not automatically support that the email is a CAN-SPAM violation. As such, Plaintiff failed to show that the emails violated §7704(a)(2) and thereby failed to show that PureHealth caused the harm alleged through sending the newsletter emails. Therefore, Plaintiff did not demonstrate that the alleged harm arose from PureHealth's contacts with the state of Utah.[34] In the Motion to Reconsider, Plaintiff argues that it only needs to make a prima facie showing and does not need to conclusively prove its case. While this is certainly true, Plaintiff does not substantively address how it made a sufficient prima facie showing and therefore does not demonstrate clear error.

Plaintiff next argues that it sufficiently tied emails sent by PureHealth post opt-out to violations of 15 U.S.C. § 7704(a)(4).[35] Plaintiff asserted in the Complaint that on receipt of "emails promoting Pure[Health], XMission, acting on behalf of its customers, opted out of any

---

[31] *Id.* at 7–9.

[32] *Id.* at 9–10.

[33] Docket No. 26, at 12 (quoting *Asis Internet Servs. v. Subscriberbase Inc.*, No. 09-3503 SC, 2010 WL 1267763, at *5 (N.D. Cal. Apr. 1, 2010)).

[34] *See, e.g.*, *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 265 (2017) (finding no specific jurisdiction where plaintiffs "do not claim to have suffered harm in [the forum] State.").

[35] Docket No. 26, at 12.

6

future email from PureHealth for each recipient email address."[36] The Complaint further alleged that after opting out, "Defendants, either directly or through their agents, failed to honor the opt-out request and transmitted at least 2,060 emails to XMission's customers after the 10-day grace period had expired."[37] In the Order, the Court concluded that "XMission has not shown that PureHealth, as opposed to its affiliates, sent any emails after receiving unsubscribe requests."[38] Neither the Complaint nor Plaintiff's Opposition provided a factual basis for the Court to determine whether it was PureHealth itself or its affiliates that sent the emails after the 10-day opt-out period expired.

To support its argument tying PureHealth newsletters to § 7704(a)(4) violations, Plaintiff now states that 157 of the 2,060 emails allegedly sent post opt-out were sent by PureHealth directly.[39] However, this information was not before the Court when it issued the Order and, as discussed above, Plaintiff does not provide a sufficient basis under which the Court should consider this new information. Based on the information before the Court at the time of the Order, Plaintiff does not demonstrate clear error in the Court's finding that Plaintiff failed to tie PureHealth's newsletter emails to the alleged opt-out violations.

Finally, Plaintiff asserts that it alleged sufficient facts to tie the emails sent directly from PureHealth to violations of 15 U.S.C. 7704(a)(5). Plaintiff argues that it sufficiently pled that PureHealth itself sent emails that failed to include a proper physical address.[40] The Complaint alleges that "Many thousands of email *[sic]* fail to contain the content required by Section

---

[36] Docket No. 2 ¶ 62; Docket No. 26, at 12 ("Upon receipt of each email advertising PureHealth, XMission clicked available opt-out links.").

[37] Docket No. 2 ¶ 63.

[38] Docket No. 24, at 9.

[39] Docket No. 26, at 13 (citing Docket No. 26-1 ¶ 23).

[40] *Id.* at 11.

7

7704(a)(5)(A)" and "Many thousands of emails ostensibly contain the required content in remotely hosted images, which violates the statutes' requirement that such be provide *[sic]* clearly and conspicuously."[41] Plaintiff asserts that PureHealth's Responses to Plaintiff's Jurisdiction Discovery Requests[42] ("Responses") and the examples of newsletter emails allegedly sent by PureHealth,[43] attached to its Opposition to the Motion to Dismiss, demonstrate failure to include a proper address.[44] The Responses stated that PureHealth only had one registered address, 4601 North Fairfax Drive, Suite 1200, Arlington, VA.[45] However, some of the attached emails listed their address at 5501 Merchants View Square, #804, Haymarket, VA. Plaintiff did not assert these facts, draw attention to them, or make any argument concerning PureHealth's specific use of improper address in the Complaint or in its Opposition. Parties should make all arguments accessible to the Court, "rather than ask [the Court] to play archaeologist with the record."[46]

Plaintiff again seeks to include information that was not before the Court at the time of the Court's ruling: "XMission has reviewed the emails from Pure Health *[sic]* directly and has identified 247 that do not include the [4601] address."[47] Again, Plaintiff provides no basis to conclude that this newly asserted information was previously unavailable and the Court declines

---

[41] Docket No. 2 ¶¶ 67–68.

[42] Docket No. 19-8.

[43] Docket No. 19-3.

[44] Docket No. 26, at 13.

[45] Docket No. 19-8, at 5.

[46] *Spitz v. Proven Winners N. Am.*, 759 F.3d 724, 731 (7th Cir. 2014) (quoting *De Silva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999)); *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) ("Judges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

[47] Docket No. 26-1, at 5; Docket No. 26, at 13–14.

to consider it. Plaintiff's argument does not demonstrate the need to correct clear error or prevent manifest injustice as to the Court's conclusion that Plaintiff failed to tie newsletter emails to violations of § 7704(a)(5) and therefore failed to demonstrate the Court could properly exercise personal jurisdiction over PureHealth.

Based on the foregoing, the Court will deny the Motion for Reconsideration.

B. ATTORNEY'S FEES

Defendant seeks attorney's fees and costs based on the Court's dismissal for lack of personal jurisdiction. Under the CAN-SPAM Act, "the court may, in its discretion . . . assess reasonable costs, including reasonable attorneys' fees, against any party."[48] A party seeking attorney's fees has the burden of proving that the award of fees is justified.[49]

In *Hardt v. Reliance Standard Life Ins. Co.*,[50] the Supreme Court concluded in interpreting an analogous "fee-shifting" statute, "a fees claimant must show some degree of success on the merits before a court may award attorney's fees under [the statute]."[51] Further,

> [a] claimant does not satisfy that requirement by achieving trivial success on the merits or a purely procedural victory, but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into . . . whether a particular party's success was substantial or . . . on a central issue.[52]

"A district court's dismissal for lack of personal jurisdiction is not a judgment on the merits."[53]

---

[48] 15 U.S.C. § 7706(g)(4).

[49] Fed. R. Civ. P. 54(d)(2)(A)–(B); DUCivR 54-2(f).

[50] 560 U.S. 242 (2010).

[51] *Id.* at 255 (internal quotation marks and citation omitted).

[52] *Id.* (internal quotation marks and citation omitted).

[53] *Contagious, LLC v. Bella B, Inc.*, No. 2:18-cv-00502-RJS-DBP, 2019 WL 11632210, at *1 (D. Utah Mar. 5, 2019) (citing *Birch v. Sprint/Nextel Corp.*, 675 F. App'x 821, 824–25 (10th Cir. 2017) ("Once the district court determine it lacked jurisdiction over this action, it lacked authority to decide issues on the merits."); *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d

9

Here, the Court dismissed Plaintiff's claims for lack of personal jurisdiction. As such, the dismissal was not a decision on the merits, "because the [C]ourt lacked jurisdiction to address the merits of Plaintiff's claim."[54] PureHealth argues that the case involved several months of discovery, including written requests, subpoenas, and a deposition, and that these months of discovery and briefing "took this matter well beyond a simple procedural motion to dismiss."[55] However, PureHealth fails to provide any legal basis by which the Court could conclude that when, after months of discovery, a court dismisses a case on procedural grounds, it entitles the moving party to attorney's fees. Therefore, the Court will deny the Motion for Attorney's Fees and Costs.

---

1193, 1216–17 (10th Cir. 2002) (holding that the district court's "jurisdictional ruling did not address the merits of [the plaintiff's] allegations"); *Martinez v. Richardson*, 472 F.2d 1121, 1126 (10th Cir. 1973) ("It is fundamental, of course that a dismissal for lack of jurisdiction is not an adjudication of the merits and therefore dismissal of the . . . claim must be without prejudice.")).

[54] *Id.* at *2.

[55] Docket No. 37, at 3.

## III. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Reconsideration Re Motion to Dismiss (Docket No. 26) is DENIED. It is further

ORDERED that Defendants' Motion for Attorney's Fees (Docket No. 27) is DENIED. It is further

ORDERED that Plaintiff's Motion for Extension of Time to Appeal and Memorandum in Support (Docket No. 28) is DENIED as moot.

DATED this 23rd day of May, 2023.

BY THE COURT:

_____
TED STEWART
United States District Judge